UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA

VERSUS                                    CRIMINAL ACTION

WILLIE JONES JR.                          NUMBER 08-108-BAJ-SCR

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein. Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Baton Rouge, Louisiana, June 6, 2014.

STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE

UNITED STATES OF AMERICA

VERSUS                                          CRIMINAL ACTION

WILLIE JONES JR.                                NUMBER 08-108-BAJ-SCR

## MAGISTRATE JUDGE'S REPORT

Before the court is the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody filed by petitioner Willie Jones Jr. Record document number 632. The motion is opposed.[1]

For the reasons which follow, the petitioner's motion should be denied.

## Background

On March 11, 2009, the petitioner pled guilty to one count Conspiracy to Distribute and to Possess with the Intent to Distribute 5 Kilograms or More of Cocaine and 50 Grams or More of Cocaine Base in violation of 21 U.S.C. § 846 (Count 1), two counts Unlawful Travel in Aid of a Racketeering Enterprise in violation of 18 U.S.C. § 1952(a) (Counts 4 and 5) and two counts Unlawful Use of Communications Facilities in violation of 21 U.S.C. § 843(b) (Counts 10 and 18) in the United States District Court for the

---

[1] Record document number 643.

Middle District of Louisiana.[2]  Petitioner was sentenced to serve
a total of 327 months of imprisonment in the custody of the United
States Bureau of Prisons.  Judgment was entered on May 9, 2011.
Petitioner appealed.  Counsel filed a brief in accordance with
*Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396 (1967).  The
Fifth Circuit Court of Appeals held the appeal failed to present a
nonfrivolous issue for appellate review and dismissed the appeal.
*United States v. Willie Jones Jr.*, 462 Fed.Appx. 438 (5th Cir.
2012).

Petitioner asserted three grounds for relief in his § 2255
motion:

Ground One:     he received ineffective assistance of counsel
                during plea negotiations when trial counsel
                gave him erroneous advice regarding his
                maximum  sentence exposure;

Ground Two:     he received ineffective assistance of counsel
                when counsel withdrew objections 2 and 8 to
                the Presentence Report (hereafter "PSR") at
                sentencing; and,

Ground Three:   he received ineffective assistance of counsel
                on appeal when appellate counsel filed an
                *Anders* brief and failed to preserve non-
                frivolous claims.

In  Ground  One,  the  petitioner  argued  that  counsel
underestimated his sentence exposure by at least 127 months.
Petitioner alleged that counsel advised him that if he entered a
guilty plea his sentence exposure was a maximum of 15 to 20 years

_____

[2] Counts 11, 12, 19, 20, 24, 27-28, 32-34, and 36-39 of the
indictment were dismissed on the motion of the United States.

2

(180 to 240 months).  Petitioner asserted that if counsel had advised him that he could receive a sentence of 327 months in prison if he pled guilty, there is a reasonable probability that he would have proceeded to trial and tested the government's case. Petitioner argued that his guilty plea was not knowing and voluntary because it was based on counsel's erroneous sentencing advice.

In Ground Two, the petitioner argued that he received ineffective assistance of counsel when counsel withdrew two sentencing objections to the PSR.  Petitioner argued that counsel withdrew objection 2 and 8 without consulting him.  Petitioner argued that as a result, appellate review of these two objections was waived.

In Ground Three, the petitioner argued that he was denied ineffective assistance of counsel on appeal when appellate counsel filed an *Anders* brief and failed to argue non-frivolous issues on appeal.  Petitioner argued that he filed a *pro se* brief in which he raised non-frivolous, meritorious issues on appeal.

## Review of the Evidence

An evidentiary hearing was conducted on Grounds One and Two, ineffective assistance of trial counsel.[3]

---

[3] The parties were notified that the petitioner's ineffective assistance of appellate counsel claim does not require an evidentiary hearing.  Record document number 644.

3

Petitioner Willie Jones, Jr. offered the following testimony. On the day of sentencing he was present in court with counsel, Asst. Federal Public Defender Mark Upton, and that prior to sentencing Upton reviewed the PSR with him. Counsel told him that the only objection being withdrawn related to a telephone conversation which took place while the petitioner was in jail. Counsel said that he did not want that conversation played because the judge might believe the petitioner was trying to "pull one over on him" and it would result in a worse outcome. Although he wanted that taped conversation played, the petitioner agreed with counsel to withdraw the objection.

Petitioner testified that at the time the sentencing hearing began he expected counsel to argue in favor of the objections to the PSR, that counsel was certain that he would succeed, and that he was not aware at the time of sentencing that the objections would be withdrawn. However, during the sentencing hearing objections 2, 3 and 8 to the PSR were withdrawn without his consent. The substance of objections 2, 3 and 8 involved the attribution of money to amounts of crack cocaine.[4] Petitioner testified that he did not want objections 2, 3 and 8 to the PSR withdrawn.

---

[4] See record document number 368, Addendum to the Presentence Report, pp. 2-3. Objection 8 is not addressed in that PSR addendum and is not found elsewhere in the record. However, there is no dispute that the substance of the objection relates to the attribution of money to amounts of crack cocaine.

Petitioner testified that he did not get an opportunity at sentencing to tell the judge that he did not want objections 2, 3 and 8 withdrawn. Petitioner was not certain whether the court gave him an opportunity to state whether he personally had any objections other than those presented at the sentencing hearing.

Petitioner testified that he believed that if objections 2, 3 and 8 had not been withdrawn his sentencing range would have been lower. Petitioner testified that if the crack was not attributed to him, then his sentencing range would have been much lower; he would have started in a different criminal history category.

Petitioner testified that he was aware of the sentencing range at the time of sentencing. Petitioner also testified that counsel told him he would not receive a sentence over 20 years. Petitioner testified that based on his conversations with counsel it was his expectation that when he pled guilty he would receive a sentence between 15 and 20 years and that was the reason he pled guilty. Petitioner testified that when he entered his guilty plea he lied to the judge when he said no one had promised him a particular sentence.

Petitioner testified that prior to signing his plea agreement he reviewed it with counsel and he understood that he was pleading guilty and could not appeal. At the time he was debriefed by the Assistant United States Attorney (hereafter "AUSA") he also discussed the contents of the plea agreement with her. Petitioner

5

could not recall whether the AUSA told him that no one, including his counsel, knew what his sentence would be.

Petitioner denied telling the Drug Enforcement Administration (hereafter "DEA") agents who arrested him that he wanted to cooperate and plead guilty.

Asst. Federal Public Defender Upton testified that he has been employed as an assistant federal public defender for five to six years and that prior to that he was in private practice in a general trial practice for more than 27 years. Upton testified that while in private practice he also served as a Federal Public Defender panel attorney for approximately 17 years, and has more than 20 years of experience representing criminal defendants.

Upton testified that he represented the petitioner during the underlying criminal proceedings and met with him more than 15 times while the petitioner was confined at the West Baton Rouge Parish prison. He used his laptop computer to review all of the taped conversations with the petitioner at least once, and there were other specific taped recordings that they listened to again on other occasions.

Upton testified that at their first meeting the petitioner made it clear that he wanted to cooperate, plead guilty and try to get some consideration on his sentence. They never discussed trial or trial strategy but always discussed what they could do to get a reduction in sentence. Upton emphasized that the petitioner had

decided to plead guilty.

Upton did not specifically recall what he did in the petitioner's case, but that it is his practice to make sure that his clients understand the complete provisions and all of the ramifications of a plea agreement. He was satisfied that when the petitioner signed the plea agreement the petitioner understood what was in the plea agreement.

Upton testified that they were both very concerned about the petitioner's sentencing exposure and that they spoke about it often. Upton was concerned because of the petitioner's prior convictions and the amount of drugs involved in this case. Other charges or enhancements could have been added to the indictment that would have seriously increased his sentence exposure. They were concerned that the petitioner could be subject to a life sentence if he proceeded to trial. Upton explained this to the petitioner.

Upton did not recall ever discussing with the petitioner the possibility of receiving a sentence in the range of 15 to 20 years. He did not complete a sentencing guidelines worksheet and the specifics of the guidelines never came up in conversations with the petitioner. They knew, given the amount of drugs involved, the petitioner was facing a maximum-type sentence and their goal was to get the least sentence possible. The sentencing range appeared to be 360 months to life and their goal was to get a sentence below

360 months, and particularly to get rid of the life sentence exposure. Upton never believed, nor would he have told the petitioner, that he was going to get a sentence of between 15 to 20 years.

Upton testified that the PSR indicated a sentencing range of 360 months to life, and he reviewed the PSR with the petitioner and the petitioner appeared to understand the PSR.

Upton filed objections to the PSR more than once and he discussed with the petitioner the objections that should be raised. In particular, he discussed with the petitioner objections related to recorded conversations the petitioner had with suppliers in Houston regarding a large sum of money. The money was converted into amounts of crack cocaine for the purpose of sentencing. Upton testified that he filed the objections but was concerned that if the recorded conversations were played at the sentencing hearing it could be very damaging to the petitioner's sentencing posture.

With regard to objections 2, 3 and 8, it was always Upton's intent to decide at the sentencing hearing whether to withdraw the objections, and he had discussed this strategy with the petitioner at the jail and again on the morning of sentencing. Upton testified that he never thought that the law was on the petitioner's side regarding the objections, and he never told the petitioner the objections would succeed.

Upton testified that the AUSA advised him more than once that

if he proceeded with the objections she would play the damaging recorded conversations at the sentencing. He determined that the petitioner had received the maximum benefit from the objections and that the best course was to withdraw objections 2, 3 and 8. He spoke with the petitioner about withdrawing the objections and the petitioner agreed. Upton characterized it as a tactical decision that he and the petitioner made together.

DEA agent Mark Lusco testified that he has been a DEA agent for approximately 23 years. Agent Lusco testified that the DEA conducted four or five wiretaps of the petitioner's telephone and that the petitioner was the primary target of the drug investigation.

Lusco testified that his first contact with the petitioner was after a search of the petitioner's house. Lusco spoke with the petitioner about pleading guilty either the day of the search or the next day. He wanted the petitioner to cooperate, so he and his partner met with the petitioner at a hotel. There they advised him that the case against him was for drug trafficking. Lusco testified that they told the petitioner that he had an opportunity to cooperate and explained the USSG § 5K1.1 reduction to sentence to him. Petitioner told them that he understood, he wanted to cooperate, and that he was going to cooperate, but that he wanted to speak with his attorney. Lusco testified that he told the petitioner to contact a criminal lawyer and the petitioner

indicated that he would contact attorney Tommy Damico.

Lusco's next contact with the petitioner was after the petitioner was indicted. Lusco testified that while being transported after he was arrested the petitioner again indicated that he wanted to cooperate. Before he signed a plea agreement, the petitioner called Lusco from prison on a regular basis. Lusco told the petitioner to go through his attorney if he wanted to speak to him.

Lusco testified that the petitioner was adamant about cooperating, and after the petitioner signed the plea agreement he cooperated during the debriefing.

Other evidence in the record is relevant to Ground One. Petitioner was represented by his counsel at the rearraignment. The Plea Agreement was read into the record.[5] Petitioner pled guilty,[6] after which he was placed under oath[7] and questioned by the district judge pursuant Rule 11.

During the Rule 11 colloquy, the district judge informed the petitioner of the charges against him to which he intended to plead guilty.[8] The district judge verified that the petitioner fully

---

[5] Record document number 478, Transcript of Re-arraignment, pp. 3-14.

[6] *Id.* at 16-19.

[7] *Id.* at 23.

[8] *Id.* at 33-42.

understood the charges against him and the sentencing ramifications of his guilty plea.[9] Petitioner understood that his sentence would not be based on any estimate he may have received from his counsel.[10] Petitioner was asked, "Has anyone forced, threatened, or made promises to ... you to get you to plead guilty?"[11] Petitioner answered, "No, sir."[12]

## Findings of Fact

A preponderance of the credible evidence supports the following factual findings.

It was the petitioner's voluntary decision to plead guilty. Petitioner's decision to plead guilty was based on his desire to reduce his sentence. Petitioner was aware of the sentencing range and understood the term of imprisonment to which he might possibly be sentenced when he pled guilty. Petitioner was aware of the consequences of the guilty plea. Upton never promised the petitioner that he would receive a sentence of between 15 and 20 years. Upton did not make an inaccurate prediction or grossly underestimate the petitioner's sentencing exposure. Petitioner knew that objections 2, 3 and 8 to the PSR might be withdrawn, that

---

[9] *Id.*

[10] *Id.* at 40–41.

[11] *Id.* at 42.

[12] *Id.*

doing so was a strategy to avoid exposing the district judge to information that might cause him to impose a longer sentence, and the petitioner tacitly agreed to the withdrawal or at least he acquiesced in the decision to do so. Upton made a strategic decision at sentencing to withdraw objections 2, 3 and 8 so as to avoid the risk of the petitioner receiving a longer sentence.

### Applicable Law and Analysis

There are four grounds upon which a federal prisoner may move to vacate, set aside, or correct his sentence: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the sentence exceeds the statutory maximum sentence; and (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255; *Hill v. United States*, 368 U.S. 424, 426-27, 82 S.Ct. 468, 470-71 (1962).

To obtain relief based upon a claim of ineffective assistance of counsel, the petitioner must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984). To prove deficient performance the petitioner must demonstrate that counsel's actions "fell below an objective standard of reasonableness." *Id.*, at 688, 104 S.Ct. at 2064. To prove prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different,"
*id.*, at 694, 104 S.Ct. at 2068, and that "counsel's deficient
performance render[ed] the result of the trial unreliable or the
proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S.
364, 372, 113 S.Ct. 838, 844 (1983).

The same test applies when a petitioner alleges ineffective
assistance of counsel in the context of a guilty plea. *Hill v.
Lockhart*, 474 U.S. 52, 58, 106 S.Ct. 366, 370 (1985). To satisfy
the second prong of this test, the petitioner must show that "there
is reasonable probability that, but for counsel's errors, he would
not have pleaded guilty and would have insisted on going to trial."
*Hill*, 474 U.S. at 59, 106 S.Ct. at 370. To meet the prejudice
prong, the defendant must affirmatively prove, and not merely
allege, prejudice. *Bonvillain v. Blackburn,* 780 F.2d 1248, 1253
(5th Cir. 1986). Thus, "[e]ven where counsel has rendered totally
ineffective assistance to a defendant entering a guilty plea, the
conviction should be upheld if the plea was voluntary. In such a
case there is 'no actual and substantial disadvantage' to the
defense." *United States v. Diaz,* 733 F.2d 371, 376 (5th Cir.1984)
(quoting *Diaz v. Martin,* 718 F.2d 1372, 1379 (5th Cir. 1983)).

A voluntary guilty plea waives all non-jurisdictional defects
in the proceedings against the defendant. *United States v.
Glinsey*, 209 F.3d 386, 392 (5th Cir. 2000). This includes claims
of ineffective assistance of counsel except insofar as the

ineffectiveness is alleged to have rendered the guilty plea involuntary. *Id*.

Rule 11, Fed.R.Crim.P., ensures that a guilty plea is knowing and voluntary by requiring the district court to follow certain procedures before accepting it.[13] *United States v. Reyes*, 300 F.3d 555, 558 (5th Cir. 2002). Petitioner has the burden to show (1) there is an error, (2) that is clear and obvious, and (3) that the error affects his substantial rights. *United States v. Marek*, 238 F.3d 310, 315 (5th Cir. 2002).

### Ground One

In Ground One, the petitioner argued that he received ineffective assistance of counsel during plea negotiations when trial counsel gave him erroneous advice regarding his maximum sentence exposure.

"[T]he negotiation of a plea bargain is a critical phase of

---

[13] Rule 11(b)(1) provides, in pertinent part, as follows:
    Before the court accept a plea of guilty or nolo contendere,... the court must inform the defendant of, and determine that the defendant understands, the following:
...
    (G) the nature of each charge to which the defendant is pleading;
    (H) any maximum possible penalty ...;
    (I) any mandatory minimum penalty;
...
    (M) in determining a sentence, the court's obligation to calculate the applicable sentencing-guideline range and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors ...

litigation for purposes of the Sixth Amendment right to effective assistance of counsel." *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473 (2010). Providing counsel to assist a defendant in deciding whether to plead guilty is "'[o]ne of the most precious applications of the Sixth Amendment.'" *United States v. Grammas*, 376 F.3d 433, 436 (5th Cir. 2004)(alteration in original) (quoting *Reed v. United States*, 354 F.2d 227, 229 (5th Cir. 1965)). When considering whether to plead guilty or proceed to trial, a defendant should be aware of the relevant circumstances and the likely consequences of his decision so that he can make an intelligent choice. *Teague v. Scott*, 60 F.3d 1167, 1170 (5th Cir. 1995) (a 28 U.S.C. § 2254 case).

If a defendant enters a guilty plea on the advice of counsel, the voluntariness of the plea turns "on whether [the] advice was within the range of competence demanded of attorneys in criminal cases." *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441 (1970). A defendant who seeks to prevail on a claim that his plea was involuntary due to counsel's representations concerning the sentence he would receive must show that his plea was motivated by an "actual promise." *Smith v. McCotter*, 786 F.2d 697, 701 (1986) (emphasis omitted). To prevail on the theory of an actual promise, the petitioner must prove: (1) the exact terms of the promise; (2) exactly when, where, and by whom the promise was made; and (3) "the precise identity of an eyewitness to the promise." *Id.* (internal

citations omitted).

Furthermore, "[a] guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence. In other words, if the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor or defense counsel, the guilty plea stands." *Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir. 2002), *abrogation on other grounds recognized by United States v. Grammas*, 376 F.3d 433, 437-38 (5th Cir. 2004). As long as the defendant understood the term of imprisonment to which he might possibly be sentenced, he was aware of the plea's consequences. *United States v. Santa Lucia*, 991 F.2d 179, 180 (5th Cir. 1993); *United States v. Smith*, 143 Fed. Appx. 559 (5th Cir. 2005) (unpublished) ("Smith ... asserts that if counsel had informed him that the government was seeking to enhance his sentence as a career offender, he would not have pleaded guilty. As long as the defendant understood the length of time he might possibly receive, however, he was aware of the plea's consequences.") However, "[b]y grossly underestimating [the defendant's] sentencing exposure ..., [counsel] breache[s] his duty as a defense lawyer in a criminal case to advise his client fully on whether a particular plea to a charge appears desirable." *Grammas*, 376 F.3d at 436-37 (internal quotation marks and citations omitted).

There is no credible evidence that Upton promised the

petitioner he would receive a sentence in the range of 15 to 20 years; nor is there any credible evidence that the petitioner's plea was motivated by any "actual promise." Petitioner was informed of the maximum possible penalties at his re-arraignment, and he indicated his understanding. Under oath, he told the judge he understood the terms of his Plea Agreement and that no other promises had been made to him by anyone.

Additionally, Upton did not make an inaccurate prediction or grossly underestimate the petitioner's sentence. Petitioner testified that although he knew his sentencing range, Upton said at he would receive a sentence of between 15 and 20 years. Upton testified that he never made such a prediction. Rather, he stated that he did not make a sentencing guidelines calculation because the petitioner's two prior convictions and the amount of drugs involved in this case exposed the petitioner to a life sentence. Upton informed the petitioner of the possibility of life imprisonment, and the record shows that the petitioner was aware of this possibility at the time he entered his guilty plea.

The hearing evidence and the other record evidence clearly shows that the petitioner was adequately informed and was fully aware of the consequences of his plea. Petitioner's plea was voluntary, knowing and intelligently entered. Petitioner's Ground One is without merit.

**Ground Two**

In Ground Two, the petitioner argued that he received ineffective assistance of counsel when Upton withdrew two objections to the PSR without his consent. Petitioner argued that this resulted in waiver of the objections on appeal.

First, the petitioner was aware that objections 2 and 8 might be withdrawn, and he tacitly consented to the withdrawal. Second, even if the petitioner was not aware that Upton had determined objections 2 and 8 should be withdrawn, the record evidence supports a finding that the petitioner acquiesced in the withdrawal.[14]

Even if the petitioner's factual allegations about Upton's performance at sentencing are assumed to be true, and even if such facts constituted deficient performance, the petitioner's claim would still fail because he has not shown any prejudice. Petitioner's argument is that had Upton not withdrawn the two objections to the PSR the two objections would have been preserved for appellate review. But there is no prejudice because the petitioner waived the right to appeal his sentence.[15] Moreover, there is nothing in the sentencing transcript or elsewhere in the record which supports finding that there is "a reasonable probability that, but for counsel's unprofessional errors, the

---

[14] Record document number 479, Sentencing Transcript, p. 4.

[15] Record document number 124, Plea Agreement, p. 3, ¶ 8,.

result of the proceeding would have been different,"[16] meaning that the district judge would have agreed with the objections and imposed a lesser or different sentence.[17] Petitioner's Ground Two is without merit.

**Ground Three**

In Ground Three, the petitioner argued that he was denied ineffective assistance of counsel on appeal. Specifically, the petitioner argued that he received ineffective assistance of counsel on appeal when appellate counsel filed an *Anders* brief and failed to argue non-frivolous issues on appeal. Petitioner argued that he filed a *pro se* brief in which he raised non-frivolous, meritorious issues on appeal.

A criminal defendant has a constitutional right to effective assistance of counsel in his first appeal as of right. *Evitts v. Lucey*, 469 U.S. 387, 393-94, 105 S.Ct. 830, 834-35 (1985); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). However, appellate counsel is not deficient for not raising every non-frivolous issue on appeal. *U.S. v. Reinhart*, 357 F.3d 521, 525 (5th Cir. 2004). The failure to brief what ultimately is a

---

[16] *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

[17] The district judge indicated that because of the extensive nature of the drug conspiracy and the extensive nature of the petitioner's prior criminal conduct a sentence at the upper end of the guidelines range was appropriate. Record document number 479, Sentencing Transcript, p. 15.

meritless issue does not constitute ineffective assistance of counsel. *Mendiola v. Estelle*, 635 F.2d 487, 491 (5th Cir. 1981). Where a petitioner argues that counsel failed to assert or fully brief a particular claim, he must show that his attorney's performance was both deficient and prejudicial. *Reinhart*, *supra*. Counsel's failure to raise an issue on appeal will be considered deficient performance only when that decision falls below an objective standard of reasonableness. *Id.* This standard requires counsel to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. *Id.* To show prejudice, the petitioner must show a reasonable probability that, but for his appellate counsel's error, the outcome of his appeal would have been different. *Pitts v. Anderson*, 122 F.3d 275, 279 (5th Cir. 1997).

The United States Court of Appeals for the Fifth Circuit reviewed counsel's brief, the relevant portions of the record and the petitioner's response in which he identified the purported non-frivolous, meritorious issues. The appellate court determined that the appeal presented no non-frivolous issue for appellate review. *United States v. Willie Jones Jr.*, 462 Fed.Appx. 438 (5th Cir. 2012).

Petitioner was not denied effective assistance of appellate counsel. The failure to brief alleged errors that were deemed meritless by the appellate court does not constitute ineffective

assistance of counsel.  *Pitts v. Anderson*, *supra*.  Petitioner's Ground Three is without merit.

## RECOMMENDATION

It is the recommendation of the magistrate judge that the petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 be denied.

It is further recommended that a certificate of appealability be denied for the reasons set forth herein.

Baton Rouge, Louisiana, June 6, 2014.


_____
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE